UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GRACE E. McROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17 CV 1447 (JMB) |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On October 17, 2013, plaintiff Grace E. McRoberts protectively filed an application for supplemental security income, Title XVI, 42 U.S.C. §§ 1381 *et seq.*, with an alleged onset date of November 1, 2009. (Tr. 158-63). A subsequent application for a period of disability and disability insurance benefits under Title II, 42 U.S.C. §§ 401 *et seq.*, is not under consideration here.[1] After plaintiff's application for benefits was denied on initial consideration (Tr. 110-16), she requested a hearing from an Administrative Law Judge (ALJ). (Tr. 117-19).

---

[1] The ALJ determined that plaintiff was not eligible for Title II benefits because her date last insured for purposes of Title II was June 30, 2011, and she had previously been determined to be not disabled through December 6, 2012. (Tr. 28, 67-79). Plaintiff conceded that she was proceeding solely on her Title XVI claim. (Tr. 49-50).

Plaintiff and counsel appeared for a hearing on September 2, 2015. (Tr. 45-63). Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. The ALJ also received testimony from vocational expert Jenifer Teixeira, M.Ed., in the form of responses to interrogatories. (Tr. 410-12). The ALJ issued a decision denying plaintiff's application on March 2, 2016. (Tr. 28-39). After reviewing additional evidence plaintiff submitted, the Appeals Council denied plaintiff's request for review on March 10, 2017. (Tr. 1-7). Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II. Evidence Before the ALJ

### A. Disability and Function Reports and Hearing Testimony

Plaintiff was born on August 29, 1978, and was 31 years old on the alleged onset date. She completed high school and received an associate's degree in billing and coding. She lived with her father and eleven-year old daughter. She had been insured through Medicaid for more than five years and received food stamps and housing assistance. (Tr. 51-53, 159-60). Plaintiff previously worked as a child-care provider, a client relations specialist in the mortgage/banking field, a customer service representative in telecommunications, a dietary aide, and a production worker/packer at a printing company. (Tr. 183).

Plaintiff listed her impairments as depression, anxiety, degenerative disc disease, asthma, and migraines. (Tr. 182). In 2013 and 2014, plaintiff was prescribed a number of medications for the treatment of anxiety, depression, insomnia, back pain, migraine, and asthma. (Tr. 184, 227).

Plaintiff stated in her November 2013 function report (Tr. 192-203) that her daily activities included getting her daughter off to school, tending to household chores and grocery shopping and, on occasion, checking on her sister. She prepared meals and completed laundry

and house cleaning. Her conditions did not impair her ability to attend to her grooming or personal hygiene. She was unable to sleep through the night and did not always have a desire to eat. She lacked the financial resources to pay her bills on time but was otherwise capable of managing her finances. Her hobbies included watching television and relaxing in a tub. She used to be able to sit, stand, walk, run, and clean without needing breaks. When she applied for disability, however, she was only able to walk for a half mile or mile before she needed to take a break for 15 to 20 minutes. In addition, she was no longer able to concentrate and multitask as she once had. She did well with written instructions and could follow spoken instructions if she asked for them to be repeated. She did not always get along with others because she was easily irritated and resented being talked down to, and she did not handle changes in routine well. Plaintiff had difficulties with lifting, bending, standing, walking, sitting, kneeling, climbing stairs, memory, completing tasks, concentrating, understanding, following instructions, and getting along with others. The Field Office interviewer spoke with plaintiff by telephone and noted that she did not appear to have any difficulty comprehending or understanding and did not seem to be in pain or struggling for breath. (Tr. 179).

Plaintiff testified at the September 2015 hearing that she experienced pain in the mid-to-low back and found it difficult to remain seated for long periods of time without rocking or shifting in her seat. (Tr. 53, 56). In addition, she had swelling on the left side of her back and pressure on her sciatic nerve which caused shooting pains in her legs. (Tr. 54). She had previously been treated with injections, but they were no longer effective and she had switched to radio frequency denervation treatments. She also took muscle relaxers to address spasms. (Tr. 54-55). She had to take her medications at different times of day in order to reduce

3

sluggishness.[2] With respect to her mental conditions, plaintiff testified that she experienced anxiety and racing thoughts and had sudden crying spells and angry outbursts. (Tr. 56-58). In addition, depression and pain impaired her ability to concentrate. For example, she tended not to complete tasks before moving on to new ones or to leave home without her grocery list. (Tr. 59-60).

Plaintiff testified her migraine headaches began when she was twelve years old. (Tr. 60). She recently started taking Gabapentin which reduced their intensity and duration. Even so, she had headaches two or three times each week, during which she had to lie down. (Tr. 60-61). In June 2015, she went to the hospital after experiencing numbness on the left side of her body. (Tr. 51). She was told that the numbness was the result of a migraine. (Tr. 61). She was frightened by the possibility of this happening while she was driving and so she no longer drive when she had a headache. (Tr. 61). Plaintiff estimated that she had four or five "bad days" every week.

### B. <u>Medical Evidence</u>

#### 1. Treatment records

Between June 2012 and March 2016, plaintiff received extensive medical treatment for chronic back pain, asthma, and depression and anxiety, in addition to counseling and community support services to address ongoing psychosocial stressors.[3] In this action, however, plaintiff

---

[2] Plaintiff was prescribed Nabumetone and Methocarbamol to treat musculoskeletal conditions; Trazadone, Abilify, Hydroxyzine, and Effexor for psychiatric conditions; Wellbutrin for smoking cessation; Gabapentin for migraines; and Advair, Albuterol, and Loratadine for asthma and allergies. (Tr. 55, 57, 60, 62)

[3] During the period under review, plaintiff received extensive services through the Crider Health Center, including psychiatric medication management, community support services, and outpatient therapy. She and her daughter also received services from the Crisis Nursery from December 2012 through January 2015. (Tr. 232-389).

4

addresses only those portions of the medical record addressing her treatment for migraine headaches.

On June 7, 2013, primary care physician Seema Iyer, M.D., noted that plaintiff had migraine headaches without aura, of moderate severity, with diffuse pain, nausea, and sensitivity to light and sound. She stated that the headaches had begun a few weeks earlier and were of variable frequency.[4] (Tr. 703-07). Plaintiff was prescribed Maxalt,[5] to be taken as needed. No change in the condition was noted at the next office visit in July 2013. (Tr. 713-17). In August 2013, plaintiff began treatment of her back pain with pain specialist Suresh Krishnan, M.D., who noted that plaintiff complained of headaches. (Tr. 454-58). In September 2013, plaintiff told psychiatrist Muhammad Arain, M.D., that Maxalt provided relief for her headaches. (Tr. 472). On two occasions in November 2013, plaintiff told pain relief specialist Suresh Krishnan, M.D., that she had continuous headaches with sharp pain that was worsened by activity. (Tr. 535, 548). Medication provided 70% relief. (Tr. 535).

On April 9, 2014, plaintiff told Crider Health Center community support specialist Krishawn Williams, M.Ed., that she was "having headaches again," possibly caused by stress.[6] (Tr. 1006). She intended to make an appointment for a cortisone shot to address the headaches. On June 11, 2014, plaintiff's primary care provider noted that plaintiff's migraines were "currently resolved with Dr. trigger point injections," and on August 28, 2014, pain specialist Dr.

---

[4] Plaintiff was diagnosed with migraine headaches in April 2011. She was prescribed medication and told to discontinue all caffeine use and, in November 2011, she reported that her headaches had improved. In the decision issued on December 6, 2012, on the prior application, the ALJ determined that plaintiff's migraines were not a serious impairment. (Tr. 70).

[5] Maxalt, or rizatriptan, is used to treat the symptoms of migraine headaches. It does not prevent migraine attacks. https://medlineplus.gov/druginfo/meds/a601109.html (last visited on Apr. 23, 2018).

[6] Krishawn Williams began providing community-based services to plaintiff in January 2013. There is no mention that plaintiff complained of headaches in the progress notes from the prior nine meetings. (Tr. 1009-48).

5

Krishnan noted that plaintiff denied having headaches. (Tr. 755, 671). In September 2014, plaintiff reported to Dr. Krishnan that she had occasional "sharp pains" in the parietal region of her head. (Tr. 665). By October 2014, they appeared to be resolved, (see Tr. 660-64), and plaintiff did not complain of headaches again until February 26, 2015.[7] (Tr. 656). In April and May 2015, Dr. Krishnan noted that plaintiff reported having headaches, (Tr. 650-54, 646-49), however, she was undergoing treatment for sinusitis with facial pressure and headaches during this time frame. (Tr. 781-85, 820-22).

On June 15, 2015, plaintiff was admitted to St. Joseph's Hospital for evaluation of numbness in her left arm and the left side of her face. (Tr. 571-75). An MRI of the brain indicated a possible Chiari 1 malformation[8] and papilledema.[9] (Tr. 796). Neurologist Gary Gualberto, M.D., opined that the Chiari 1 malformation was probably not symptomatic and that plaintiff's presenting symptoms were caused by a complicated migraine. (Tr. 797). He prescribed Gabapentin and directed plaintiff to avoid caffeine and nicotine, keep a headache journal, and complete 40 minutes of aerobic exercise three times a week. (Tr. 797). In July 2015, plaintiff told her primary care physician that she had experienced another episode of tingling in the left side of her face that lasted for about 10 to 20 minutes, followed by a slight headache. (Tr. 1074). In August 2015, Dr. Gualberto noted that plaintiff's numbness had

---

[7] Between October 2014 and February 2015, plaintiff had approximately 25 service contacts and thus multiple opportunities to report migraine headaches.

[8] Chiari I malformations are most often the result of structural defects in the brain or spinal cord that occur during fetal development. See https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Chiari-Malformation-Fact-Sheet (last visited on April 27, 2018). Thus, plaintiff's statement that Dr. Gualberto believed that the Chiari I malformation was caused by her migraine headache is a misreading of the report. See Doc. # 16 at 10. Properly read, the report indicates that plaintiff's symptoms — i.e., "left facial/arm numbness" — were caused by migraine. (Tr. 797).

[9] Papilledema is a condition in which increased intracranial pressure causes swelling of the optic disc. See https://rarediseases.info.nih.gov/diseases/7318/papilledema (last visited on April 30, 2018).

resolved. (Tr. 811). Plaintiff told him that she "sometimes" had mild, dull headaches in the late evening but that she did not get severe headaches as she had in the past. (Tr. 807). This is consistent with reports she made to community support specialist Kayla Burton and pain specialist Dr. Krishnan. (Tr. 893; 863).

The treatment notes do not contain any further mention of headaches until November 2015, when plaintiff was diagnosed with sinusitis, accompanied by coughing and headaches. (Tr. 1093, 1099).

        2.        <u>Opinion evidence</u>

On December 20, 2013, State agency consultant Elissa Lewis, Ph.D., completed a Psychiatric Review Technique form based on a review of the record. (Tr. 99-102). Dr. Lewis concluded that plaintiff had medically determinable impairments in the categories of 12.04 (affective disorders) and 12.06 (anxiety-related disorders). Dr. Lewis found that plaintiff had no restriction in the activities of daily living and had mild difficulties in maintaining social functioning and maintaining concentration, persistence and pace. She had no repeated episodes of decompensation of extended duration. The ALJ gave limited weight to Dr. Lewis's opinion. (Tr. 37). Single Decision Maker Holly Abbey completed a Physical Residual Functional Capacity Assessment. (Tr. 101-04). She determined that plaintiff could lift or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8-hour day. She could never climb ladders and could occasionally climb stairs, stoop, crouch, or crawl. She should avoid concentrated exposure to fumes. The ALJ gave this opinion no weight. (Tr. 37).

On October 3, 2015, plaintiff underwent a consultative evaluation with Raymond Leung, M.D. (Tr. 831-34). Dr. Leung identified plaintiff's chief complaints as migraine headaches,

7

degenerative disc disease, and asthma. Plaintiff reported that, on a weekly basis, she had two or three headaches that lasted for hours. She also reported that pain medications helped. Dr. Leung's physical examination of plaintiff disclosed no abnormal findings of any systems, including the neurologic and musculoskeletal systems. Following the examination, Dr. Leung completed a medical source statement, in which he opined that plaintiff had the ability to lift or carry 10 pounds continuously; 20 pounds frequently; and 50 pounds occasionally. She was able to sit up to 8 hours without interruption; stand for 2 hours without interruption and up to 4 hours total in an 8-hour day; and walk for 1 hour without interruption and up to 2 hours total in an 8-hour day. Dr. Leung found that plaintiff had no limitation in her ability to use hand controls and was able to use foot controls on an occasional basis. She could occasionally engage in "postural" activities, such as climbing, kneeling, or crawling, and could balance continuously. She should avoid exposure to all pulmonary irritants, but could tolerate occasional exposure to other environmental conditions, including unprotected heights, moving parts, and extreme temperatures. Finally, Dr. Leung found that plaintiff was able to perform a variety of activities of daily living, such as shopping and meal preparation. (Tr. 837-42). The ALJ gave this opinion great weight. (Tr. 37-38).

On October 5, 2015, treating physician Dr. Krishnan completed a medical source statement. (Tr. 855-56). When asked to identify plaintiff's symptoms from a checklist, Dr. Krishnan endorsed fatigue, weakness, pain, and depression, but did not endorse headaches. Dr. Krishnan did not supply a diagnosis or otherwise attribute plaintiff's symptoms to a medical condition. Dr. Krishnan opined that plaintiff was unable to sit, stand, or walk as much as 2 hours of an 8-hour day, and would need to take a 20-minute break after every 1 to 2 hours of work. She had the ability to lift up to 10 pounds occasionally and could only rarely lift 20 pounds.

8

And, while she could occasionally climb stairs, she was rarely able to twist or bend and was unable to crouch at all. Dr. Krishnan opined that plaintiff would have difficulty working full time due to her limitations and would be absent from work more than 3 times a month. While Dr. Krishnan stated that "emotional factors" did not contribute to plaintiff's symptoms and functional limitations, he also identified depression as a factor affecting plaintiff's pain. (Tr. 855-56). The ALJ gave Dr. Krishnan's limited weight. (Tr. 37-38).

Plaintiff completed a psychological evaluation with Thomas J. Spencer, Psy.D., on October 21, 2015. (Tr. 845-48). Plaintiff identified the episode of numbness leading to her hospitalization as a TIA which started with a severe headache. She stated that she continued to experience headaches with sensitivity to light and sound and "pressure over the entire head." The pain came and went throughout the day. When she had a headache she would "lie[] down for a couple hours." Dr. Spencer completed a medical source statement in which he opined that, as a result of major depressive disorder and anxiety, plaintiff had mild limitations in the abilities to manage simple instructions and interact appropriately with others; and moderate limitations in the abilities to manage complex instructions, make complex decisions, and respond appropriately to usual work situations and changes in work routines. (Tr. 849-50). The ALJ gave Dr. Spencer's opinion great weight. (Tr. 38).

### III. <u>Standard of Review and Legal Framework</u>

To be eligible for disability benefits, plaintiff must prove that she is disabled under the Act. See <u>Baker v. Sec'y of Health and Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992); <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC

to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining

11

that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. The ALJ found that plaintiff had not engaged in substantial gainful activity since October 17, 2013, the application date. (Tr. 30). At steps two and three, the ALJ found that plaintiff had severe impairments of degenerative disc disease, asthma, migraine headaches, and major depressive disorder.[10] Id. at 30-31. Plaintiff does not challenge these findings.

The ALJ next determined that plaintiff had the RFC to perform sedentary work, was unable to climb ladders, ropes or scaffolds, and was able to occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl. She was restricted from operating foot controls and had to avoid concentrated exposure to various environmental conditions. Due to her mental limitations, she was limited to occupations that involve only simple, routine, and repetitive tasks, in a low stress job, with only occasional decision making and changes in the work setting. (Tr. 33).

In assessing plaintiff's RFC, the ALJ summarized the medical record and opinion evidence, as well as plaintiff's own statements regarding her abilities, conditions, and activities of daily living. While the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ also determined that plaintiff's statements regarding their intensity, persistence and limiting effect were "not entirely credible."

---

[10] The ALJ analyzed plaintiff's eligibility for Listing 12.04 (depressive, bipolar and related disorders) and the "paragraph B" criteria. Id. For the purposes of considering the paragraph B criteria, the ALJ found that plaintiff had no restrictions in her activities of daily living; mild difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 32). Plaintiff had no episodes of decompensation of extended duration. Id.

(Tr. 34). In making his credibility determination the ALJ found that plaintiff was "totally independent in all activities of daily living." In addition, the medical evidence showed that plaintiff's migraines were resolved by Gabapentin and spinal injections. With respect to her degenerative disc disease, plaintiff routinely displayed full range of motion, full strength, and a normal gait during physical examinations. Furthermore, she reported to medical providers that spinal injections and radio frequency treatment reduced her pain. With respect to her claim of disabling asthma, the ALJ noted that plaintiff continued to smoke despite her physician's advice that she quit.[11] In addition, although plaintiff testified that her medications made her sluggish, there are no indications in the medical record that she ever reported this side effect to her treating physicians. The ALJ also found that plaintiff "had little in the way of disabling psychiatric complaints." (Tr. 37). Plaintiff does not challenge the ALJ's credibility determination.

At step four, the ALJ concluded that plaintiff could not return to her past relevant work. (Tr. 29). Her age placed her in the "younger individual" category on the alleged onset date. She had at least a high school education and was able to communicate in English. Id. The Medical-Vocational Guidelines thus supported a finding that she was not disabled. Based on the vocational expert's answers to interrogatories (Tr. 410-12), the ALJ found at step five that someone with plaintiff's age, education, and functional limitations could perform other work that existed in substantial numbers in the national economy, namely as a document preparer, an eyeglass polisher, and a stuffer. (Tr. 39). Thus, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. Id.

---

[11] In December 2014, plaintiff stated that she was willing to quit smoking. (Tr. 929). Nonetheless, in June 2015, plaintiff was still smoking 1.5 packs of cigarettes a day, despite Dr. Krishnan's warning of the ill effects of smoking on chronic pain. (Tr. 645, 572). And, in July and August 2015, ENT specialist Dr. Barnes noted that plaintiff was still smoking despite suffering from chronic sinusitis. (Tr. 823, 826).

## V. Discussion

Plaintiff asserts two challenges to the ALJ's decision. She contends that the ALJ (1) improperly failed to include migraine-related limitations in the RFC determination, and (2) failed to properly weigh the opinion of her treating physician, Dr. Krishnan.

### A.    The RFC Determination

Plaintiff argues that the ALJ's RFC determination is improper because it does not include any limitations arising from migraine headaches, which she identifies as her need to avoid light and sound, lie down, take breaks, or have unplanned absences. These limitations would preclude employment. (See Tr. 412).

A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotations, alteration and citations omitted). An ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (citation omitted, alteration in original). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (citation omitted). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)).

Here, the ALJ found that plaintiff's migraine headaches were a serious medical impairment but determined that the medical evidence showed that her migraines were adequately controlled with Gabapentin and injections. Plaintiff argues that the ALJ erred by selectively considering a medical note describing improvement in her migraines without also acknowledging that her symptoms were unpredictable and "waxed and waned" throughout treatment. [Doc. # 16 at 8].

Plaintiff relies on Nowling v. Colvin, 813 F.3d 1110 (8th Cir. 2016) to support her assertion that the ALJ should have included limitations based on migraines in the RFC. The plaintiff in Nowling suffered from a somatoform disorder that manifested as pseudoseizures during which she variously lost consciousness, displayed tremors and shaking, or was unable to speak. Her seizures were often preceded by migraines. Id. at 1116. She lost her job as a nurse's aide because she could not be left alone with patients. Id. at 1115. She received extensive treatment and the records indicated occasional mild improvement, but "read as a whole [the records] show her symptoms waxed and waned with some short term improvement but without substantial long-term worsening or improvement during the 2008 to 2011 time frame." Id. at 1116. The ALJ did not include in the RFC any limitations based on Nowling's inability to work for half-day periods following a seizure or headache. Id. at 1119. The Eighth Circuit remanded the matter for further proceedings, citing the ALJ's failure to consider the medical evidence longitudinally as required when assessing mental impairments, id. at 1120 (citing § 12.00.D.1, Subpt. P, App.1 § 12.00), failure to consider the testimony of a relative who had observed the pseudoseizures, and improper analysis of the opinions of Nowling's treating psychiatrist and social worker, id. at 1122-24. In the passage that plaintiff relies on here, the court stated that the ALJ improperly gave great weight to those portions of the treating psychiatrist's notes

15

documenting improvement without also acknowledging that Nowling's "symptoms waxed and waned throughout the substantial period of treatment." Id. at 1123.

To the extent that plaintiff in this case had a pre-application history of "waxing and waning" migraines, the treatment records show that they improved once she started taking Gabapentin in July 2015. By August 2015, plaintiff reported only mild, dull headaches in the evening. Plaintiff argues that the medical records show that she continued to have migraines. It is true that plaintiff complained of headaches in the following months, but a careful review of the medical records shows that these were attributed to upper respiratory infections and sinusitis, not migraines, for which she was treated with Augmentin.[12] Unlike the plaintiff in Nowling, no medical provider identified plaintiff's migraines as causing disabling symptoms. Indeed, the neurologist Dr. Gualberto prescribed frequent aerobic activity as treatment for the migraine condition. And, while pain specialist Dr. Krishnan opined that plaintiff would require breaks and have absences at a rate that precludes employment, he did not attribute these limitations to headaches or migraines.

Plaintiff also argues that the Court cannot uphold the ALJ's decision by citing factors not relied on by the ALJ, citing Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001). Plaintiff's reliance is misplaced. "[A] reviewing court may not uphold an agency decision based on reasons not articulated by the agency," when "the agency [has] fail[ed] to make a necessary determination of fact or policy" upon which the court's alternative basis is premised. Id.

---

[12] Plaintiff began receiving treatment for recurring sinusitis in April 2015. (Tr. 820-22). In July 2015, she reported that conservative treatment was not effective and was prescribed Augmentin. (Tr. 823-25). In August 2015, she reported improvement. (Tr. 826-27). In October 2015, she once again sought treatment for upper respiratory infection with headache and congestion. (Tr. 1088-92). When these symptoms had not resolved in November 2015, she was again prescribed Augmentin. (Tr. 1093-98). She continued to complain of issues with her sinuses through March 2016. (Tr. 1103, noting improvement with treatment; Tr. 1138, noting to be referred to ENT; Tr. 18, noting continuous sinus problems).

(alterations in original; citation omitted). Here, the ALJ made the necessary factual findings to support the conclusion that plaintiff's migraines did not warrant additional limitations. See id. ("Our review of the ALJ's decision . . . reveals that the ALJ did in fact make the factual findings necessary for the district court's alternative holding. Thus, the general limitation on a reviewing court's ability to use reasons not utilized by the agency is not applicable to this case.") .

The Court finds that substantial evidence in the record as a whole supports the ALJ's decision not to include additional limitations based on migraine headaches in plaintiff's RFC.

**B.    Dr. Krishnan's Opinion**

Plaintiff underwent three evaluations in October 2015. Consultative physician Dr. Leung and consultative psychologist Dr. Spencer both examined plaintiff and concluded that she did not have disabling limitations. By contrast, treating pain specialist Dr. Krishnan opined that plaintiff did have limitations that preclude employment. The ALJ gave great weight to the opinions of Drs. Leung and Spencer and limited weight to Dr. Krishnan's opinion. Plaintiff argues that the ALJ did not properly evaluate Dr. Krishnan's opinion.

The opinion of a treating physician such as Dr. Krishnan must be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[13] Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting Wagner v. Astrue, 499 F.3d 842, 848–49 (8th Cir. 2007)). "Not inconsistent . . . is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (*i.e.*, it does not have

---

[13]This continues to be true for plaintiff's claim because it was filed before March 27, 2017. Combs v. Berryhill, 868 F.3d 704, 709 (8th Cir. 2017); 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply."); § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.").

to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Id. (quoting S.S.R. 96–2p, Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996)).

Here, the ALJ determined that Dr. Krishnan's opinion was not supported by the medical evidence of record and was inconsistent with his own treatment notes. (Tr. 37-38). Dr. Krishnan's opinion consists of a two-page checklist form, portions of which were left blank. In particular, Dr. Krishnan did not supply information regarding the length of the treatment relationship or plaintiff's diagnoses and prognoses. The opinion is also very general in that it cites no medical evidence for its conclusions. See Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) ("The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value.") (citation omitted). Furthermore, Dr. Krishnan's opinion is inconsistent with his own treatment notes. For instance, one of the four symptoms he endorsed was weakness, but his treatment notes routinely showed that plaintiff had full motor strength. (Tr. 457-58; 551, 538, 681, 676, 671, 666, 662, 865, 861). And, while plaintiff told Dr. Krishnan that she experienced weakness in April, May and June 2015, Dr. Krishnan noted that plaintiff had "5/5 motor function all around" in his examination of her. (Tr. 652, 646-47, 643-44). Dr. Krishnan's October 2015 opinion is also inconsistent Dr. Leung's finding two days earlier that plaintiff had full muscle strength. (Tr. 833). Indeed, the record contains no medical evidence that plaintiff was ever found to have less than full muscle strength. Thus, the ALJ did not err in determining that Dr. Krishnan's opinion was not entitled to controlling weight.

"Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." Papesh, 786 F.3d at 1132

18

(quoting Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007). If a treating physician's opinion is not given controlling weight, then the ALJ must review various factors to determine how much weight is appropriate. Julin v. Colvin, 826 F.3d 1082, 1088 (8th Cir. 2016) (citing 20 C.F.R. § 416.927(c)). These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Administration's attention which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)-(c)(6).

Plaintiff argues that the ALJ's analysis of Dr. Krishnan's opinion does not comport with the requirements set forth in Papesh, 786 F.3d at 1132-33. In Papesh, the Eighth Circuit found that the ALJ improperly failed to give substantial weight to the opinions of two treating physicians. With respect to one physician, the ALJ erred by failing to offer any basis for giving his opinion "non-substantial weight," such as finding that the physician's opinion was inconsistent with the record. Id. at 1132. Here, by contrast, the ALJ found that Dr. Krishnan's opinion was inconsistent with both the record and his own treatment notes. With respect to the opinion of the second physician in Papesh, the ALJ incorrectly found that his opinion was inconsistent with the record where the only contradictory opinion came from a nonexamining source. Id. Here, Dr. Krishnan was the only examining source to opine that plaintiff had disabling limitations, while two other examining sources concluded that she did not. Thus, Papesh does not compel a finding that the ALJ erred in finding that Dr. Krishnan's opinion was not entitled to substantial weight. To the extent that plaintiff suggests that Papesh stands for the

19

proposition that the ALJ must explicitly address the regulatory factors, the Court disagrees. Rather, as the Papesh court stated, a treating physician's opinion may have "limited weight if it provides conclusory statements only, or is inconsistent with the record." Id. (citations omitted). Dr. Krishnan's opinion fails on both counts and the ALJ did not err in giving the opinion less than substantial weight.

\* \* \* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**. A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of May, 2018.